CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

NOV 07 2014

JULIA C. DUDLEY, CLERK
BY: /s/ S. Moody
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| KRISTIE ST. CLAIR REED, | Civil Action No. 7:13-CV-00543 |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION** |
| | By: Hon. Glen E. Conrad |
| DEPARTMENT OF CORRECTIONS / COMMONWEALTH OF VIRGINIA, | Chief United States District Judge |
| Defendant. | |

On September 23, 2014, a jury found for the plaintiff, Kristie St. Clair Reed, on her retaliation claim brought pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq. Reed has now filed a Petition for Back Pay and Front Pay ("the petition"), Docket No. 53, seeking equitable relief pursuant to that statute. The defendant, Virginia Department of Corrections ("VDOC"), has responded to the petition, Docket No. 56. The matter is now ripe for review.

## Background

The facts of this case are outlined in detail in the court's memorandum opinion granting in part and denying in part VDOC's motion for summary judgment, Docket No. 35. Thus, only a brief summary follows here.

Reed worked as a senior correctional officer at Bland Correctional Center ("BCC") in Bland, Virginia from 2007 until she was terminated in 2012. Prior to her termination, Reed earned $31,746.00 annually in that position. See Petition Ex. A, Docket No. 53-1. Reed was sexually harassed by a BCC coworker. She reported this harassment to BCC management on April 9, 2012, and was terminated from her position on May 18, 2012. Reed subsequently

brought this action against VDOC on November 15, 2013, alleging in part that VDOC terminated her in retaliation for reporting sexual harassment in violation of Title VII.

Following the liability phase of a bifurcated trial, a jury found for Reed on her retaliation claim, Docket No. 46. After the jury returned this verdict, Reed and VDOC agreed to forego the damages phase of the trial. Instead, the parties stipulated to the amount of compensatory damages to be awarded in this case, Docket No. 41, and submitted the issues of equitable relief and attorney's fees to the court for decision. See Docket No. 48. Reed then submitted this petition, in which she seeks $32,252.00 in back pay, plus prejudgment interest, and $41,544.00 in front pay. Id.

## Discussion

### I. Legal Standard

Title VII is a remedial statute designed in part to make the victims of discrimination whole. As a general rule, a district court has "broad equitable discretion to award back pay, front pay, and interest to effectuate [these] remedial intentions." Ford v. Rigidply Rafters, Inc., 984 F. Supp. 386, 389 (D. Md. 1997); see Franks v. Bowman Transp. Co., 424 U.S. 747, 763-64 (1976); Albemarle Paper Co. v. Moody, 422 U.S. 405, 416-17 (1975). "A Title VII plaintiff who is unable to find comparable work is entitled to back pay 'as a matter of course' unless the defendant produces evidence that [the] plaintiff did not use reasonable efforts to mitigate damages." Ford, 984 F. Supp. at 389 (quoting Martin v. Cavalier Hotel Corp., 48 F.3d 1343, 1358 (4th Cir. 1995)). In a retaliatory discharge case like this one, a back pay award necessarily amounts to the "difference between what the [plaintiff] would have earned had the wrongful [termination] not occurred from the period of termination to judgment, and the [plaintiff's] actual earnings during that period." Id. The sum awarded is within the trial court's discretion. Martin,

48 F.3d at 1358.

Front pay is "money awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement." Pollard v. E.I. du Pont Nemours & Co., 532 U.S. 843, 846 (2001). It "compensate[s] victims of discrimination for the continuing future effects of discrimination until the victim can be made whole." Proffitt v. Veneman, No. 5:01-CV-00067, 2002 U.S. Dist. LEXIS 21906, at *4 (W.D. Va. Nov. 6, 2002). "The award of front pay rests squarely within the district court's discretion, which must be 'tempered' by 'the potential for windfall' to the plaintiff." Id. (quoting Nichols v. Ashland Hosp. Corp., 251 F.3d 496, 504 (4th Cir. 2001)). The court, therefore, "must judiciously scrutinize the record to determine whether future events are sufficiently predictable to justify such an award." Ford, 984 F. Supp. at 392; see Evans v. Larchmont Baptist Church Infant Care Ctr., Inc., 956 F. Supp. 2d 695, 708 (E.D. Va. 2013) (declining to award front pay when doing so would require "assum[ing] certain unknowns" and "would [therefore] be unduly speculative and inappropriate").

With this legal framework in mind, the court will now determine the amount of back pay and front pay, if any, to which Reed is entitled in this case.

## *II. Back Pay*

As a successful Title VII plaintiff, Reed is entitled to back pay "as a matter of course." Martin, 48 F.3d at 1358. VDOC has asserted several arguments, however, suggesting that the back pay award should be limited in this case. First, VDOC asserts that Reed's award should be reduced by the amount of unemployment benefits she received following her termination. Second, VDOC contends that Reed failed to mitigate her damages. The court will consider each argument in turn.

VDOC urges the court to deduct unemployment benefits from Reed's back pay award. Reed was unemployed, and received unemployment benefits from the Virginia Employment Commission ("VEC"), for a period of twenty-eight weeks following her termination. See Reed Decl. ¶ 6, Petition Ex. B, Docket No. 53-2. She would have earned $17,094 if she remained employed by VDOC during this period. VDOC argues, however, that any back pay awarded to Reed must be offset by the unemployment benefits that she received, because the VEC and VDOC are both state agencies. VDOC reasons that, without such an offset, Reed would enjoy a double recovery at the expense of Virginia taxpayers. The court agrees.

In cases involving private employers, courts often decline to reduce a plaintiff's back pay award by benefits received from another source, like state unemployment benefits. Sloas v. CSX Transp., Inc., 616 F.3d 380, 389 (4th Cir. 2010) (stating that the collateral source rule provides that "compensation from a collateral source should be disregarded in assessing tort damages"); see Craig v. Y&Y Snacks, Inc., 721 F.2d 77, 81-85 (3d Cir. 1983) (affirming decision not to deduct benefits in a Title VII case). The collateral source rule may apply even when a plaintiff receives a benefit from the private employer itself, because "whether a given benefit is derived from a collateral source 'depend[s]…upon the exact nature of the compensation received'" rather than the source of that compensation alone. Sloas, 616 F.3d at 390. In Sloas, the Fourth Circuit stated that a benefit provided by a defendant "specifically to compensate [the plaintiff] for her injury" was not from a collateral source, and thus should be offset from the plaintiff's back pay award. Id. On the other hand, if the private employer had provided the benefit to the plaintiff for some other reason, that benefit would be collateral and should not reduce the plaintiff's recovery. Id.

The Sloas Court noted, however, that courts have applied this collateral source rule more narrowly in cases where the defendant is a government entity. See id. at 389 n.9. In such cases, courts may consider "the source of the benefits," without more, to determine whether they are collateral. Phillips v. W. Co. of N. Am., 953 F.2d 923, 931 (5th Cir. 1992); see Szedlock v. Tenet, 61 F. App'x 88, 89-90 (4th Cir. 2003) (unpublished) (affirming district court's offset of federal benefits from federal employee's back pay award under the Rehabilitation Act); Smith v. Office of Personnel Mgmt., 778 F.2d 258, 263 (5th Cir. 1985) (same in ADEA case). Here, Reed's unemployment benefits are not collateral, because "both the benefits and the back pay come from the same source – the [state] government." Szedlock, 61 F. App'x at 89-90. The court concludes, therefore, that those benefits should be offset from Reed's back pay award.[1]

VDOC also asserts that Reed failed to sufficiently mitigate her damages as required by Title VII. Reed began working as a part-time security officer for Carilion New River Valley Medical Center ("Carilion") on December 3, 2012. Reed Decl. ¶ 6. She earned $12.49 per hour for an average of nineteen hours per week for the next twenty-five weeks, until she received a full-time offer from Carilion at "the beginning of June, 2013."[2] Id. at ¶ 7. She worked full time at Carilion until the date of judgment, earning $13.25 per hour for a forty-four hour work week. Id. Nonetheless, VDOC argues that Reed has failed to fully mitigate her damages, because she earned less in these positions than she would have earned at BCC. As a result, VDOC argues that Reed should not receive back pay for the period of time after she began working at Carilion. The court disagrees.

---

[1] The record lacks evidence showing the amount of unemployment benefits that Reed actually received. The court believes that the parties should be able to readily determine this amount and deduct it from the back pay award. If, however, the parties are unable to agree on an appropriate amount, they may present evidence to the court for decision.
[2] Because Reed does not indicate the exact date on which she transitioned to full-time employment in the petition, the court will assume that she began working full time on June 1, 2013.

Under 42 U.S.C. § 2000e-5(g)(1), a Title VII claimant must mitigate her damages, which requires the claimant to be "reasonably diligent in seeking and accepting new employment substantially equivalent to that from which [s]he was discharged." Brady v. Thurston Motor Lines, Inc., 753 F.2d 1269, 1273 (4th Cir. 1985) (citing Ford Motor Co. v. EEOC, 458 U.S. 219, 232 (1982)). A plaintiff cannot receive back pay for a period during which she did not fulfill her duty to mitigate. Id. "Failure to mitigate is an affirmative defense for which the employer bears the burden of proof." Wagner v. Dillard Dept. Stores, Inc., 17 F. App'x 141, 153 (4th Cir. 2001). An employer ordinarily must come forward with evidence that comparable work is available, unless the employer can demonstrate that the plaintiff "made no reasonable attempt to find work." Id. at 153-54. "A plaintiff who remains idle instead of seeking employment forfeits [her] right to back pay for the period during which [she] did not seek employment. Id. at 153 (citing Brady, 753 F.2d at 1273). However, "[o]btaining a part-time job…satisfies Plaintiff's obligation to mitigate damages absent a showing by [the defendant] that this action was not in good faith." Ford, 984 F. Supp. at 390 (citing Donnelly v. Yellow Freight Sys., Inc., 874 F.2d 402, 411 (7th Cir. 1989)).

In this case, Reed obtained part-time – and later full-time – employment in a similar field following her termination. VDOC has not produced any evidence suggesting that Reed's acceptance of employment at Carilion was in bad faith or that more comparable work was readily available. The court concludes that Reed adequately mitigated her damages by obtaining comparable employment following her termination. She is entitled, therefore, to recover the difference between what she actually earned at Carilion prior to the date of judgment and what she would have earned at BCC during that same period.

6

Case 7:13-cv-00543-GEC Document 59 Filed 11/07/14 Page 6 of 8 Pageid#: 1745

Reed seeks prejudgment interest on her back pay award.  "Title VII authorizes prejudgment interest as part of the back pay remedy."  Loeffler v. Frank, 486 U.S. 549, 557-58 (1988).  The court will apply Virginia's six percent statutory judgment rate to this award.  See Va. Code § 6.02-302; E.E.O.C. v. Liggett & Myers, Inc., 690 F.2d 1072, 1074 (4th Cir. 1982) (stating that a district court may, in its discretion, choose to apply an interest rate provided for by state law); Proffitt, 2002 U.S. Dist. LEXIS 21906, at *10-11 (applying the Virginia statutory rate to a Title VII judgment).  This interest will also be compounded to reflect the "economic reality" that "[b]ut for [VDOC's] conduct, [Reed] would have had access to this money during the back pay period and would have been able to earn interest not only on the principal amounts, but also on accumulated interest."  Hylind v. Xerox Corp., 749 F. Supp. 2d 340, 351 (D. Md. 2010), reversed on other grounds by 481 F. App'x 819 (4th Cir. 2012).

### III. *Front Pay*

Reed also seeks front pay in this case.  Specifically, Reed asserts that, because she "hoped to continue her employment with [VDOC] until her retirement," the court should award her the difference between what she earns in her current position and what she would have earned at BCC for each year between now and when she reaches age sixty-five.  Petition at ¶¶ 23, 26.  The court, however, cannot justify a front pay award based on the record before it.  Although Reed earns slightly less now than when she was employed by VDOC, there is no evidence suggesting that this disparity will continue for the next thirty-six years.  Indeed, a colorable argument can be made that Reed may ultimately earn more in the private sector than if she had she remained employed by VDOC until she retired.[3]  See Def.'s Resp. at 5, Docket No. 56.  The record simply lacks "the essential data necessary to calculate a reasonably certain front

---

[3] The court also cannot say with certainty that Reed would have remained employed by VDOC until her retirement.  Reed's prior disciplinary record, for example, suggests that VDOC may have had a legitimate reason to

pay award." Bruso v. United Airlines, Inc., 239 F.3d 848, 862 (7th Cir. 2001). Awarding Reed front pay here "would require this [c]ourt to assume certain unknowns." Evans, 956 F. Supp. 2d at 708. The court declines to do so.

### Conclusion

For the reasons stated, the court will award Reed back pay in the amount of $28,321.25,[4] less the amount of state unemployment benefits that Reed received following her termination. Prejudgment interest will be added to the final back pay amount. Reed is also entitled to compensatory damages in accordance with the parties' previous stipulation, Docket No. 41. The parties are directed to confer regarding the amount of unemployment benefits to be deducted from Reed's back pay award, and to present a proposed final judgment containing this agreed-upon amount to the court. Thereafter, the court will enter final judgment in this matter.

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 7th day of November, 2014.

*/s/ Glen Conrad*
Chief United States District Judge

---

terminate her at some point, absent any retaliatory motive. See Mem. Op. at 5, Docket No. 35.

[4] The court calculates this sum by adding together the following amounts: (1) the $17,094.00 that Reed would have earned at BCC during her twenty-eight weeks of unemployment; (2) the $9,329.75 difference between what Reed earned during her twenty-five weeks of part time employment at Carilion and what she would have earned at BCC during that same period; and (3) the $1,897.50 difference between what Reed earned during her sixty-nine weeks of full time employment at Carilion and what she would have earned at BCC during that period.