CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAY 15 2015

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| KRISTIE ST. CLAIR REED,<br><br>Plaintiff,<br><br>v.<br><br>DEPARTMENT OF CORRECTIONS /<br>COMMONWEALTH OF VIRGINIA,<br><br>Defendant. | Civil Action No. 7:13-CV-00543<br><br>**MEMORANDUM OPINION**<br><br>By: Hon. Glen E. Conrad<br>Chief United States District Judge |

On September 23, 2014, a jury found in favor of Plaintiff Kristie St. Clair Reed on her claim that she was terminated in retaliation for reporting sexual harassment, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq. The case is now before the court on a renewed motion for judgment as a matter of law filed by Defendant Virginia Department of Corrections ("VDOC"). For the following reasons, the court will deny that motion.

**Factual and Procedural History**

The facts of this case are outlined in detail in the court's memorandum opinion granting in part and denying in part VDOC's motion for summary judgment. See Docket No. 35. Thus, only a brief summary follows here.

Reed worked as a senior correctional officer at Bland Correctional Center ("BCC") in Bland, Virginia from 2007 until she was terminated in 2012. Reed asserts that she was sexually harassed by her co-worker, Sergeant James Mitchell, from 2009 to 2012. Although Reed claims that she mentioned Mitchell's harassment to her immediate supervisor shortly after it began, she agrees that she did not formally report the harassment to BCC officials until April 8, 2012, one day after she was reprimanded for failing to remain "on post" while working as a dorm officer in "One Top," one of BCC's dormitories. On May 18, 2012, Reed was terminated from her position, purportedly based on her disciplinary record as a whole. Reed brought this action against VDOC on November

15, 2013, alleging in part that VDOC had actually terminated her in retaliation for reporting sexual harassment.

On September 22-23, 2014, a bifurcated jury trial was conducted on Reed's claims of gender discrimination and retaliation. At the close of Reed's evidence and again before the case was submitted to the jury, VDOC moved for judgment as a matter of law, arguing that Reed had not presented sufficient evidence of a casual connection between her protected activity and her termination. The court denied VDOC's motions, and the jury returned a verdict in Reed's favor on her retaliation claim. After the jury returned this verdict, Reed and VDOC agreed to forego the damages phase of the trial. Instead, the parties stipulated to the applicable amount of compensatory damages, and submitted the issues of back pay and attorney's fees to the court for decision. See Docket Nos. 41, 48. The court entered final judgment in Reed's favor on November 13, 2014. See Docket No. 62. VDOC then filed a renewed motion for judgment as a matter of law under Rule 50(b) of the Federal Rules of Civil Procedure. The motion has been fully briefed and was argued on February 20, 2015. It is ripe for review.

## Standard of Review

Rule 50(b) of the Federal Rules of Civil Procedure permits a party to renew its motion for judgment as a matter of law following the jury's verdict and the entry of judgment. The court may grant such a motion only if it finds that a "reasonable jury would not have had a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). The court must view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. Lack v. Wal-Mart Stores, Inc., 240 F.3d 255, 259 (4th Cir. 2001). It cannot substitute its judgment for that of the jury by reweighing the evidence or making credibility determinations. Price v. City of Charlotte, 93 F.3d 1241, 1250 (4th Cir. 1996). The court should "accord the utmost respect to jury

2

verdicts and tread gingerly in reviewing them." Id. Thus, when a jury has deliberated and returned a verdict in favor of the non-movant,

> a court may set aside the verdict only if there exists such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or the evidence in favor of the movant is so overwhelming that reasonable and fair minded persons could not arrive at a verdict against it.

Cash v. Cnty. of Erie, 654 F.3d 324, 333 (2d Cir. 2011).

## Discussion

To prevail on a Title VII retaliation claim, absent direct evidence of retaliation, a plaintiff "must first establish a prima facie case of retaliation, whereupon the burden shifts to the employer to establish a legitimate non-retaliatory reason for the [adverse employment] action." Price v. Thompson, 380 F.3d 209, 212 (4th Cir. 2004). Once the employer does so, "the plaintiff must then show that the employer's proffered reasons are pretextual." Id. "More specifically, the plaintiff can prove pretext by showing that the explanation is unworthy of credence or by offering other forms of circumstantial evidence sufficiently probative of [retaliation]." Id. (internal quotation marks and citations omitted).

To initially establish a prima facie case of retaliation, Reed must show that (1) she engaged in protected activity; (2) VDOC took adverse action against her; and (3) a causal relationship exists between the two. Id. Reed has done so here. She engaged in protected activity when she reported Mitchell's sexual harassment on April 8, 2012. See Trial Tr. at 112, September 23, 2014 ("Day 2 Tr."), Docket No. 54; Trial Tr. at 52, Sept. 22, 2014 ("Day 1 Tr."), Docket No. 55. VDOC took an adverse employment action against her approximately five weeks later, when Warden Larry Jarvis terminated her on May 18, 2012. Day 1 Tr. at 62. The temporal proximity between Reed's protected activity and her termination "gives rise to a sufficient inference of causation to satisfy the prima facie requirement." King v. Rumsfeld, 328 F.3d 145, 151 (4th Cir. 2003) (ten-week period sufficiently close to raise inference of causality); see Williams v. Cerberonics, Inc., 871 F.2d 452,

3

457 (4th Cir. 1989) (stating that although temporal proximity alone "far from conclusively establishes the requisite causal connection, it certainly satisfies the less onerous burden of making a prima facie case of causality").

The burden thus shifts to VDOC to articulate a legitimate, non-retaliatory reason for Reed's termination. See Price, 380 F.3d at 212. VDOC has done so. On April 30, 2012, Jarvis issued Reed a "Group II Notice" based on a report written by Reed's watch commander, Captain Larry Shelton, which indicated that Reed had been absent from her post on April 7, 2012. Day 2 Tr. at 28-29. Specifically, Shelton's report stated that he observed Reed "sitting in the office chair, talking on the telephone" instead of patrolling the dormitories as required by her post orders. See Pl.'s Ex. 7, Docket No. 44. Reed had two prior disciplinary infractions on her record, so this third notice gave Jarvis the discretion to terminate her. Day 1 Tr. at 62. Jarvis testified that he decided to fire Reed because he believed that her disciplinary record as a whole "was serious enough" to demonstrate that "this type of work was not working out for [her]." Id. at 33-34.

Because VDOC provided a legitimate justification for her termination, "the burden shifts back to [Reed] to prove by a preponderance of the evidence that the employer's stated reasons 'were not its true reasons, but were a pretext for retaliation.'" Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004) (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000)). "It is well-established that 'it is permissible for the trier of fact to infer the ultimate fact of [retaliation] from the falsity of the employer's explanation,' 'especially since the employer is in the best position to put forth the actual reason for its decision.'" Westmoreland v. Prince George's Cnty., Md., 876 F.Supp.2d 594, 609 (D. Md. 2012) (citing Reeves, 530 U.S. at 143). "Thus, a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully [retaliated]" against the plaintiff. Reeves, 530 U.S. at 148. "Proof

4

that the defendant's explanation is unworthy of credence is [] one form of circumstantial evidence that is probative of intentional [retaliation], and it may be quite persuasive." Id. at 147. Ultimately, the plaintiff must prove that her protected activity was the but-for cause of the adverse employment action she experienced. See Univ. of Tex. Sw. Med. Ctr. v. Nassar, 113 S. Ct. 2517, 2534 (2013).

At trial, Reed introduced evidence discrediting Jarvis's proffered explanation for her discipline and resulting termination. Reed testified that she became ill on April 7, 2012 after she ingested antibiotics on an empty stomach. See Day 1 Tr. at 39. She stated that, due to her repeated vomiting that night, she remained in One-Top's office area, where the bathroom was located, instead of continuously patrolling the dormitory floor. Id. Reed also called Correctional Officer Charles Taylor, her field training officer, to ask for his advice regarding how to leave her shift early. Id. at 42-43. Reed explained that calling Taylor was reasonable under the circumstances, see id., and also introduced evidence that other BCC correctional officers regularly used dorm telephones to make personal calls. See id. at 63; Day 2 Tr. at 43. Both Taylor and Officer Brian Parris corroborated Reed's testimony. See Day 2 Tr. at 71; Day 1 Tr. at 107-108. Shelton's written report also noted that, after he spoke to Reed that evening, she went into the office bathroom and "[i]t sounded as though [she] was throwing up sick." Pl.'s Ex. 7.

Reed also introduced evidence calling into question the veracity of Shelton's written report. That report stated that Sergeant Mitchell, Reed's harasser, told Shelton that Reed and Taylor were romantically involved, and that Mitchell "bets that she was on the phone with Officer Taylor" for personal reasons. Id. Reed and Taylor both testified, however, that they never had a personal or romantic relationship. Day 1 Tr. at 8; Day 2 Tr. at 74. Reed also testified that Mitchell had threatened to "fix" her reviews if she refused to date him, and that she felt that this falsehood was his attempt to do so. Day 1 Tr. at 10, 48. Jarvis recalled Shelton's report stating that Reed left her

5

post because she was upset about "personal matters," and he chose to discipline her based on that information. Id. at 9. Jarvis also testified, however, that he was aware that Reed stated that she was ill on the evening in question, and that an officer's illness would be relevant to his determination of whether to discipline her for violating BCC policies. Day 2 Tr. at 35, 17-18. A number of witnesses, including Reed, testified that correctional officers were not disciplined under similar circumstances. See, e.g., Day 1 Tr. at 63, 116; Day 2 Tr. at 18, 43, 69, 77. Viewing the record as a whole in the light most favorable to Reed, therefore, the court believes that a reasonable juror could reject Jarvis's proffered explanation for Reed's discipline and resulting termination and thereby "infer the ultimate fact of intentional [retaliation]." Reeves, 530 U.S. at 147 (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993)).

VDOC emphasizes that "there [are] instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was [retaliatory]." Reeves, 530 U.S. at 148. The court does not disagree. To be sure, other plaintiffs in other cases have presented compelling circumstantial evidence that the articulated explanations for adverse employment actions taken against them were cover for retaliation. See, e.g., Maron v. Va. Polytechnic Inst. & State Univ., 508 F. App'x 226, 230-31 (4th Cir. 2013) (finding employer's justifications for plaintiff's termination pretextual where plaintiff's supervisor had threatened to ruin her career if the plaintiff did not "stay off the radar" and "stop pursuing the things that [she was] pursuing."). Reed's case certainly may have been stronger had she produced some thinly-veiled threat or other evidence of mendacity. See, e.g., Reeves, 530 U.S. at 147. Nonetheless, "a plaintiff does not need a 'smoking gun' to prove invidious intent, and few plaintiffs will have one. Rather, circumstantial evidence is not only sufficient, but may also be more certain, satisfying, and persuasive than direct evidence." Merritt v. Old Dominion Freight Line, Inc., 601 F.3d 289, 300 (4th Cir. 2010). The court simply

6

cannot say that this is a case where "the record conclusively revealed some other, [nonretaliatory] reason for the employer's decision, or [where] the plaintiff only created a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no [retaliation] had occurred." Reeves, 530 U.S. at 148 (citations and internal quotation marks omitted) (emphasis added).

At bottom, "[t]he determination of whether [a plaintiff's] protected activity was the 'but for' cause of [her] termination ultimately will be based on a credibility assessment of the witnesses at trial, a task best left to the jury." Sass v. MTA Bus Co., 6 F. Supp. 3d 229, 235 (E.D.N.Y. 2014). The jury in this case was free to disbelieve Jarvis and credit Reed's theory of the case, given the evidence she introduced at trial. The court cannot say that the jury's decision to do so "could only have been the result of sheer surmise and conjecture." Cash, 654 F.3d at 333. The court is constrained, therefore, to deny VDOC's Rule 50(b) motion.

## Conclusion

For the reasons stated, VDOC's motion is denied. The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 15th day of May, 2015.

/s/ Glen Conrad

Chief United States District Judge